IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| DOMINIQUE C.,[1] | ) |
| | ) |
| Plaintiff, | ) |
| | ) Case No. 21-cv-04565 |
| v. | ) |
| | ) Honorable Beth W. Jantz |
| MARTIN J. O'MALLEY, | ) |
| Acting Commissioner of Social Security,[2] | ) |
| | ) |
| Defendant. | ) |
| | ) |

**MEMORANDUM OPINION AND ORDER**

This action was brought under 42 U.S.C. § 405(g) to review the final decision of the Commissioner of Social Security denying Plaintiff Dominique C.'s, application for Supplemental Security Income ("SSI"). The parties have consented to the jurisdiction of the United States Magistrate Judge pursuant to 28 U.S.C. §636(c). For the reasons that follow, Plaintiff's request to reverse the Commissioner's final decision [dkt. 1, Compl.; dkt. 14, Pl.'s Memo.; dkt 20, Pl.'s Reply] is denied and the Commissioner's decision is affirmed.

---

[1] In accordance with Internal Operating Procedure 22, Privacy in Social Security Opinions, the Court refers to Plaintiff by her first name and the first initial of her last name.
[2] Pursuant to Federal Rule of Civil Procedure 25(d), Martin J. O'Malley has been substituted for his predecessor.

**BACKGROUND**

**I.   Procedural History**

On August 20, 2014, Plaintiff applied for SSI, alleging disability since September 1, 2006. R. 525-30. The claim was denied initially on November 10, 2014, and upon reconsideration on January 7, 2015. R. 176-207. A hearing before an Administrative Law Judge ("ALJ") was held on July 14, 2016. R. 121-167. Plaintiff's claim was denied by the ALJ on October 19, 2016. R. 208-25. On March 28, 2017, the Social Security Administration Appeals Council (the "Appeals Council") issued a remand order directing the ALJ to consider whether Plaintiff was entitled to Child's Insurance Benefits. R. 226-29. On October 2, 2017, a second hearing before the same ALJ was held. R. 81-120. On December 4, 2017, Plaintiff's claim was again denied by the ALJ. R. 230-251. On November 1, 2018, the Appeals Council issued another remand order directing the ALJ to first, give further consideration to Plaintiff's maximum residual functional capacity ("RFC") and to provide rationale with specific references to evidence in support of assessed limitations, including giving further consideration to opinion evidence, and second, to obtain supplemental evidence from a vocational expert ("VE") to clarify the effect of the assessed limitations on Plaintiff's occupational base. R. 252-55. Another hearing was held on May 29, 2019, in front of a different ALJ. R. 55-80. On August 28, 2019, the ALJ denied Plaintiff's claim. R. 25-54. On June 22, 2021, the Appeals Council reviewed the decision, considered a piece of untimely evidence the ALJ failed to evaluate, and ultimately adopted the ALJ's decision. R. 1-9.

**II.   The ALJ's Decision**

The ALJ analyzed Plaintiff's claim in accordance with the Social Security Administration's five-step sequential evaluation process. R. 32-44. The ALJ found at step one that Plaintiff had not engaged in substantial gainful activity since her alleged onset date of September 1, 2006. R. 32. At step two, the ALJ concluded that Plaintiff had the following severe impairments: mixed connective tissue disease (MCTD), systemic lupus, Raynaud's syndrome, fibromyalgia, and idiopathic thrombocytopenic purpura (ITP) status post splenectomy. R. 32. The ALJ concluded at step three that her impairments, alone or in combination, did not meet or medically equal one of the Social Security Administration's listings of impairments. R. 33-34. Before step four, the ALJ determined that Plaintiff retained the RFC capacity to perform sedentary work except that Plaintiff was limited to: no more than occasionally operating foot

controls bilaterally; no more than frequently handling, fingering, or feeling bilaterally; no more than occasionally stooping, kneeling, crouching, crawling, or climbing ramps or stairs; never climbing ladders, ropes, or scaffolds; avoiding extreme cold, extreme heat, humidity, and wetness; avoiding moving mechanical moving parts and unprotected heights; no more than occasionally being exposed to irritants and chemicals; and never performing at a production rate or pace work such as assembly line work. R. 34-42. At step four, the ALJ found that Plaintiff had no past relevant work. R. 43. At step five, the ALJ concluded that jobs exist in significant numbers in the national economy that Plaintiff could perform, considering her age, education, work experience and RFC. R. 43-44. This led to the ALJ finding that Plaintiff was not disabled under the Social Security Act. R. 44.

### III.   The Appeals Council Decision

Following the ALJ's decision, on September 3, 2019, Plaintiff asked the Appeals Council to review the ALJ's decision. R. 515-18. On April 13, 2021, the Appeals Council notified Plaintiff by letter that it had granted her request for review. R. 519-24. In that letter, the Appeals Council told Plaintiff that it planned to agree with the ALJ's denial, but find that the ALJ made an error because she failed to consider records from Advocate Health Care (the "Advocate Records") which were received on June 24, 2019, approximately one month after the hearing. R. 520. The Advocate Records contain medical records from a rheumatology visit that took place on March 15, 2018. R. 1852-63. The Appeals Council explained that per regulation, evidence not submitted within 5 days of a hearing must be addressed to determine whether the evidence should be accepted regardless of an untimely filing, and that the ALJ failed to address the Advocate Records in line with this rule. R. 520. The Appeals Council told Plaintiff they planned to correct the error by considering the Advocate Records. *Id.* The Appeals Council examined the Advocate Records and found that they were consistent with other record evidence and did not provide for more restrictive limitations than those included in the ALJ's RFC. *Id.* Based on a note of underlying depression in the Advocate Records, the Appeals Council found that Plaintiff had a non-severe impairment of depression, "resulting in no more than mild limitations in [her] ability to understand, remember, or apply information; interact with others; concentrate, persist, or maintain pace; and adapt or manage [her]self." R. 520-21. The Appeals Council notified Plaintiff it intended to adopt the ALJ's decision, including her RFC. R. 521. On June 22, 2021,

the Appeals Council issued its final decision, which essentially mirrored the contents of the April 13, 2021 letter. R. 1-9.

## DISCUSSION

### I.  Judicial Review

Under the Social Security Act, a person is disabled if she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). To determine disability within the meaning of the Social Security Act, the ALJ conducts a five-step inquiry, asking whether: (1) the claimant has performed any substantial gainful activity during the period for which she claims disability; (2) the claimant has a severe impairment or combination of impairments; (3) the claimant's impairment meets or equals any listed impairment; (4) the claimant retains the RFC to perform her past relevant work; and (5) the claimant is unable to perform any other work existing in significant numbers in the national economy. 20 C.F.R. § 416.920(a). "A finding of disability requires an affirmative answer at either step three or step five." *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 352 (7th Cir. 2005). "The claimant bears the burden of proof at steps one through four, after which at step five the burden shifts to the Commissioner." *Id.*

Because the Appeals Council granted review, the Appeals Council's decision became the final decision of the Commissioner and is reviewable by this Court. 42 U.S.C. § 405(g); *Diantha S. v. Saul*, No. 18 CV 7909, 2021 WL 2072137, at *3 (N.D. Ill. May 24, 2021); *Bauzo v. Bowen*, 803 F.2d 917, 921 (7th Cir. 1986). The Court must review the ALJ's opinion as modified by the Appeals Council. *See Diantha S.*, 2021 WL 2072137, at *3 ("The Appeals Council granted review in this case, and with a few modifications, adopted the ALJ's factual and legal conclusions in their entirety. Therefore, the Court must review both the Council's decision and the ALJ's underlying opinion as modified."); *Arbogast v. Bowen*, 860 F.2d 1400, 1402-03 (7th Cir. 1988) ("[I]n this case, the Appeals Council explicitly adopted, as modified, the opinion of the ALJ. Accordingly, we must review the decision of the ALJ as modified by the Appeals Council.").

The Appeals Council is held to the same standard as the ALJ, and therefore, judicial review is limited to determining whether the ALJ's decision – as adopted and modified by the Appeals Council – adequately discusses the issues and is based upon substantial evidence and the proper

legal criteria. *Diantha S.*, 2021 WL 2072137, at *3; *see Villano v. Astrue*, 556 F.3d 558, 561-62 (7th Cir. 2009). "Substantial evidence" is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (internal quotation omitted). "To determine whether substantial evidence exists, the court reviews the record as a whole but does not attempt to substitute its judgment for the ALJ's by reweighing the evidence, resolving material conflicts, or reconsidering facts or the credibility of witnesses." *Beardsley v. Colvin*, 758 F.3d 834, 836-37 (7th Cir. 2014). While this review is deferential, "it is not intended to be a rubber-stamp" on the ALJ's decision. *Stephens v. Berryhill*, 888 F.3d 323, 327 (7th Cir. 2018). The Court will reverse the ALJ's finding "if it is not supported by substantial evidence or if it is the result of an error of law." *Id.* at 327.

The ALJ has a basic obligation both to develop a full and fair record and to "build an accurate and logical bridge between the evidence and the result [so as] to afford the claimant meaningful judicial review of the administrative findings." *Beardsley*, 758 F.3d at 837; *see also Jarnutowski v. Kijakazi*, 48 F.4th 769, 773 (7th Cir. 2022). Although the ALJ is not required to mention every piece of evidence in the record, the ALJ's analysis "must provide some glimpse into the reasoning behind her decision to deny benefits." *Zurawski v. Halter*, 245 F.3d 881, 889 (7th Cir. 2001); *accord Craft v. Astrue*, 539 F.3d 668, 673 (7th Cir. 2008). The ALJ "must explain [the ALJ's] analysis of the evidence with enough detail and clarity to permit meaningful appellate review." *Scrogham v. Colvin*, 765 F.3d 685, 695 (7th Cir. 2014) (quoting *Briscoe*, 425 F.3d at 351). Thus, even if reasonable minds could differ as to whether the claimant is disabled, courts will affirm a decision if the ALJ's opinion is adequately explained and supported by substantial evidence. *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008).

**II.    Analysis**

Plaintiff argues that the Commissioner's decision should be reversed and remanded because the ALJ: (1) failed to accommodate Plaintiff's nonexertional deficits,[3] (2) failed to conduct a proper assessment of a treating source opinion, and (3) failed to properly accommodate Plaintiff's manipulative limitations. [Dkt. 14; dkt. 20]. For the following reasons, the Court does not find that any of Plaintiff's arguments warrant a reversal of the Commissioner's decision.

---

[3] "Limitations or restrictions which affect [an individual's] ability to meet the demands of jobs other than the strength demands, that is, demands other than sitting, standing, walking, lifting, carrying, pushing or pulling, are considered nonexertional." 20 C.F.R. § 416.969a(a)

**1. There was no error in Plaintiff's RFC determination in regard to her nonexertional deficits.**

Plaintiff first argues that the ALJ failed to acknowledge her medically determinable impairment of depression, resulting in an insufficient accommodation of Plaintiff's nonexertional deficits. [Dkt. 14 at 7-11]. Her argument rests on the fact that the ALJ did not consider the Advocate Records (which note underlying depression) and therefore did not incorporate Plaintiff's limitations stemming from her depression (alone and in combination with her pain) into her RFC determination. [Dkt. 14 at 7]. However, the Court must review the final decision of the Commissioner, which in this case, is the ALJ's decision *as modified by* the Appeals Council. *See Diantha S.*, 2021 WL 2072137, at *3. The Appeals Council did consider the Advocate Records, particularly discussed Plaintiff's underlying depression, determined Plaintiff had a non-severe impairment of depression, and *then* adopted the ALJ's RFC without adding further nonexertional limitations. R. 5. In coming to this conclusion, the Appeals Council discussed Plaintiff's normal mental status findings, her lack of mental health treatment, and other record evidence showing her normal mood, affect, behavior, memory, and judgment, with no depression, suicidal thoughts, or anxiety. *Id.* Upon review of this discussion, the Court can trace the Appeals Council's reasoning as to why it declined to add additional limitations to Plaintiff's RFC and it therefore built the required bridge between the evidence and the RFC it adopted.[4] *See Beardsley*, 758 F.3d at 837.

Nonetheless, because the Appeals Council did not add additional limitations to the RFC, Plaintiff suggests there was an error. [Dkt. 14 at 7-8]. Plaintiff is correct that an RFC must incorporate all of the limitations supported by the record, including those that arise out of non-

---

[4] Plaintiff also uses this section of her brief to argue that the ALJ's analysis of her nonexertional limitations was inadequate because it partially relied on Plaintiff's activities of daily living ("ADLs"). [Dkt. 14 at 8-10]. The Court disagrees. In finding no marked limitations in daily living, social functioning, or maintaining concentration, persistence, and pace, the ALJ partially looked to Plaintiff's ability to participate in her ADLs. R. 33. Plaintiff is correct that ALJs should not equate ADLs with demands in the workplace, but it is still permissible for the ALJ to examine this evidence. [Dkt. 14 at 8-10]; *see Alvarado v. Colvin*, 836 F.3d 744, 750 (7th Cir. 2016). Indeed, the ALJ looked beyond Plaintiff's ADLs, and partially relied on Plaintiff's own statement that she can pay attention for "as long as needed" and can finish what she starts. R. 33, 597. Plaintiff argues that her ADLs and her statements about her own concentration and persistence do not speak to her abilities in the workplace, but the Court cannot reweigh the evidence and substitute its own judgment. [Dkt. 14 at 8-10]; *Brumbaugh v. Saul*, 850 F. App'x 973, 976 (7th Cir. 2021).

severe impairments, like her depression. [*Id.* (citing 20 C.F.R. § 404.1545 and *Yurt v. Colvin*, 758 F.3d 850, 857 (7th Cir. 2014)]. However, a finding of an impairment does not necessitate the imposition of restrictions or limitations. *Weaver v. Berryhill*, 746 Fed.Appx. 574, 578-79 (7th Cir. 2018); *Rick M. v. Saul*, No. 20 CV 4369, 2021 WL 2588762, at *5 (N.D. Ill. June 24, 2021). The ALJ and Appeals Council were not required to limit Plaintiff's RFC just because Plaintiff has a non-severe impairment of depression. *See Weaver*, 746 Fed.Appx. at 579. Indeed, Plaintiff did not meet her burden to provide evidence that her conditions support any further limitations than those included in her RFC. *See id.* She points to no evidence that her depression (or her depression combined with her pain or other physical impairments) requires additional limitations. *See id.* ("It was [Plaintiff's] burden to establish not just the existence of the conditions, but to provide evidence that they support specific limitations affecting her capacity to work…[Plaintiff] does not identify any evidence regarding the combined effects of her [conditions] that would justify additional limitations in the RFC assessment."). Plaintiff points to no further evidence-based restrictions that could be included in a revised RFC on remand and any error would therefore be harmless. *See Jozefyk v. Berryhill*, 923 F.3d 492, 498 (7th Cir. 2019) (finding any error would be harmless where there were no evidence-based restrictions that the ALJ could include in a revised RFC on remand).

**2. The ALJ adequately supported her assessment of the medical opinion of Dr. Syeda Farheen Ali, MD.**

Plaintiff next argues that the ALJ failed to properly assess the opinions submitted by a treating source, Dr. Ali, ignoring the directives in the November 1, 2018 remand order from the Appeals Council. [Dkt. 14 at 11-12]. Indeed, the November 1, 2018 remand order directed the ALJ to further evaluate Dr. Ali's opinions as to Plaintiff's ability to perform work-related functions. R. 253-54, 1315-19, 1712-18. But the ALJ did specifically address these opinions, assigned them "some weight" and "little weight," and sufficiently explained why she assigned them the weight that she did.

Under 20 C.F.R. § 404.1527(c)(2),[5] a treating source's opinion should receive controlling weight if is (1) well-supported by medical findings and (2) consistent with other substantial evidence in the record. *Elder*, 529 F.3d at 415. The ALJ was only required to "minimally articulate…her justification for rejecting or accepting specific evidence of a disability," which is

---

[5] 20 C.F.R. § 404.1527 applies as Plaintiff's claim was filed before March 27, 2017.

a "lax standard." *Berger v. Astrue*, 516 F.3d 539, 545 (7th Cir. 2008) (citation omitted); *see also Elder*, 529 F.3d at 415 (applying minimal articulation standard to treating physician opinions). The Court must uphold "all but the most patently erroneous reasons for discounting a treating physician's assessment." *Stepp v. Colvin*, 795 F.3d 711, 718 (7th Cir. 2015).

Plaintiff does not argue that Dr. Ali's opinions should have been afforded controlling weight and has thus waived the argument. *See Elder*, 529 F.3d at 415. But even if Plaintiff had not waived the argument, it would have failed, as the ALJ sufficiently explained that Dr. Ali's opinions were inconsistent and not supported. First, the ALJ addressed Dr. Ali's August 2016 opinion, which noted that Plaintiff would "reasonably be expected to have significant problems in sustaining any type of full-time work activity on a full time 5-day basis," but also that Plaintiff would not "reasonably have marked limitation in…her ability to complete a normal workday and workweek without interruptions from symptoms related to…her condition(s)[.]" R. 42, 1316-18. The opinion also noted that Plaintiff would not "reasonably be expected to experience significant deficiencies in sustained concentration, persistence and pace..." R. 1318. The ALJ gave this opinion "some weight," explaining that some of it was consistent with the record, while some of it was unsupported by the record. R. 42. The ALJ gave specific examples to support these findings.[6] R. 42-43.

The ALJ also addressed Dr. Ali's October 2017 opinion which noted that Plaintiff's concentration and attention were markedly impacted by her pain, "resulting in frequent failure to complete tasks," and that she could not "function in a competitive work setting." R. 43, 1717. The ALJ gave that opinion "little weight," explaining that some of the limitations in it were

---

[6] The ALJ stated, "[s]ome of it is consistent with the record, including the claimant having bad and good days as evidenced by her reported pain levels to providers, having a hard time holding objects based on her pain and weakness in her hands, and had some drowsiness and fatigue from her medication which is in part why she stopped taking them at times and why providers switched her medications. However, the limitations regarding the performing activities of daily living, traveling, and maintaining full-time work are unsupported…Further, there is at least one instance of the claimant being able to report that she could actually complete her activities of daily living. Further, although the limitation on driving is presumably based on her issues with her hands and feet having weakness, as explained, during many appointments she denied having those symptoms and during many physical exams she had no musculoskeletal deficits, including several actually performed by Dr. Ali…Additionally, as explained above, although the claimant had some symptoms that caused her pain, she did not consistently follow her treatment regimen." R. 42-43.

unsupported by the record. R. 43. The ALJ gave specific examples to support this conclusion.[7] *Id.* Additionally, the ALJ explained that she had accounted for some of the limitations Dr. Ali opined to in both the 2016 and 2017 opinions in the RFC – Plaintiff's pain with standing and other symptoms were accommodated by the sedentary work limitation, and her concentration issues were accommodated by the production pace requirements. R. 43.

Given these explanations, the ALJ certainly did not ignore the remand order, as Plaintiff argues, and did adequately discuss the weight that she assigned to Dr. Ali's opinions. [Dkt. 14 at 11-12]. Further, even though Plaintiff waived the argument that Dr. Ali's opinions should have been afforded controlling weight, the ALJ met her burden of minimally articulating why she assigned less than controlling weight to Dr. Ali's opinions. There is no indication that the ALJ made a reversible, patent error. The Court cannot reweigh the facts and come to its own determination where the ALJ's conclusion was supported by substantial evidence, as is the case here. *See Beardsley*, 758 F.3d at 836-37.

### 3. The ALJ adequately supported the manipulative limitations she assigned to Plaintiff.

Plaintiff's final argument is that the ALJ failed to explain or support the manipulative limitations she assigned to Plaintiff. [Dkt. 14 at 12-14]. Particularly, the ALJ limited Plaintiff to sedentary work with no more than "frequently handling, fingering, or feeling bilaterally." R. 34, 41. Plaintiff points to record evidence that purportedly supports a more restrictive limitation and concludes that, "with th[e]se findings in mind, it is unclear why the ALJ arbitrarily determined that Plaintiff could frequently…use her hands and fingers in a full-time work setting." [Dkt. 14 at 12-13]. Plaintiff does not address the ALJ's decision in this regard, however, which contrary to Plaintiff's assertions, adequately explains the manipulative limitation.

In making her RFC determination, the ALJ concluded that overall, Plaintiff "did not consistently report having symptoms, she did not consistently have deficits during physical exams, some providers noted the discrepancies between her alleged symptoms and the objective results,

---

[7] The ALJ stated, "[t]he limitation regarding her sitting is unsupported by the record, considering her lack of appointments where she appeared in acute distress and had no musculoskeletal complaints or deficits. The limitations regarding her concentration are unsupported by the record because, although she sometimes reported having pain and other issues that may affect her concentration, these symptoms were not consistently reported, she declined several forms of treatment…" R. 43.

and she was not always compliant with her medication or physical therapy." R. 41. In making this conclusion, the ALJ *explicitly* discussed her symptoms related to manipulation, as follows. The ALJ recognized Plaintiff's MCTD (which she found to be a severe impairment) and Plaintiff's reported weakness in her hands but found that the record did not support consistent symptoms. R. 41. The ALJ considered that Plaintiff had some issues with her grip and hands, but also noted that during many appointments, Plaintiff denied having any musculoskeletal symptoms, including pain or weakness. *Id.* The ALJ also noted that although there were sometimes deficits during physical exams, those deficits were not present in dozens of other physical exams, which showed Plaintiff's full range of motion, no tenderness or swelling, and full strength. *Id.* The ALJ further considered imaging done but noted that it did not consistently reveal deficits. *Id.* The ALJ explained how she took all of this into account when she determined that Plaintiff should be limited to "no more than frequent handling, fingering, or feeling bilaterally." *Id.*

The Court can trace the ALJ's reasoning as to why she assigned frequent manipulative limitations to Plaintiff, and she therefore built the required bridge between the evidence and the RFC she adopted. *See Beardsley*, 758 F.3d at 837. Plaintiff asks the Court to reweigh the evidence regarding her manipulative limitations, but the Court is not permitted to do this. *Id.* at 836-37.

## CONCLUSION

The final decision of the Commissioner was adequately explained and supported by substantial evidence. For the foregoing reasons, Plaintiff's request to reverse the Commissioner's final decision [dkt. 1, Compl.; dkt. 14, Pl.'s Memo.; dkt 20, Pl.'s Reply] is denied and the Commissioner's decision is affirmed.

**SO ORDERED.**

Date: March 1, 2024

BETH W. JANTZ

United States Magistrate Judge